### McCLASKEY et al. v. BARR et al.

#### (Circuit Court, S. D. Ohio, W. D. June 18, 1894.)

1. PARTITION — COMPENSATION FOR IMPROVEMENT — NECESSITY OF CROSS BILL.
   A plea by defendants in possession, setting up the statute of limitations and adverse possession, was overruled. on the ground that they were rightfully in possession as cotenants. *Held*, that any equities they might have as cotenants to compensation for improvements might be allowed, without a cross bill, as incidental to the partition, under the general prayer for relief. Dictum in 48 Fed. 137, disapproved.

2. SAME—IMPROVEMENTS BY COTENANTS—TAXES.
   In partition between cotenants, defendants having exclusive possession, who had bought in what they supposed to be all the outstanding interests in the land, may be allowed, under the laws of Ohio, for improvements made by them after such purchase and after the termination of a preceding life estate, and before suit for partition was brought, to the extent that the value of the property was enhanced by such improvements, not exceeding their cost; but they cannot be allowed for taxes and assessments except by way of offset to rents.

3. FEDERAL COURTS—STATE LAWS RULES OF DECISION.
   State laws relating to compensation for improvements upon land, made in good faith, are rules of property, which federal courts will recognize and follow.

This was a suit by Sarah E. McClaskey and others against Robert Barr and others for partition of lands. The court rendered a decree for partition (48 Fed. 130), and there was a reference thereupon to a special master. Complainants excepted to the special master's report as to claims by defendants for compensation for improvements.

H. T. Fay, for complainant.

S. T. Crawford and W. S. Thurston, for cross complainants.

Richard A. Harrison, Stephens, Lincoln & Smith, and Bateman & Hooper, for respondents.

SAGE, District Judge. This case is before the court on exceptions to the special master's report, which present questions relat-

ing to claims for compensation for improvements made by the defendants who are tenants in common in possession. These questions may be classified under three heads: (1) Those relating to improvements made during the life tenancy; (2) those relating to improvements made after the termination of the life tenancy, and before the institution of this suit; (3) those relating to improvements made pending this suit.

It is objected on behalf of the complainants that no relief can be given to defendants on account of improvements, for the reason that there are no pleadings authorizing any such relief. In support of this contention counsel cite 1 Daniell, Ch. Pr. 712, as follows:

"If the defendant states upon his answer certain facts as evidence of a particular case, which he represents as a consequence of those facts, and upon which he rests his defense, he will not be permitted afterwards to make use of the same facts, for the purpose of establishing a different defense from that to which, by his answer, he has drawn the plaintiff's attention."

The defendants by plea set up the statute of limitations with adverse possession. That plea was overruled. They now cite cases to the point that no trespasser, intruder, or volunteer can recover for improvements made by him while he was such. The court overruled the plea for the reason that it found that the defendants in this case were not trespassers or intruders or volunteers, but cotenants in possession, which distinguishes this case from cases cited, in which it was held that by the English law and by the common law of this country the owner recovers his land by ejectment without being subject to paying for the improvements which may have been made upon it.

In the case of Winthrop v. Huntington, 3 Ohio, 327, 333, the complainant, having been ejected from land claimed by him as owner in consequence of a recovery at law, filed his bill seeking to be considered as trustee for the lands in the character of absolute owner. This he claimed on the ground that, as the improvements and payments of taxes were for the benefit of the respondents, equity might well consider those acts as performed in the character of agent, so as thus to be enabled to do justice to the parties. The court said that the complainant acted in all that he did as a volunteer; that it was impossible to give him any other character; and that there was not only no case, but no principle, in which a mere volunteer could maintain a suit in law or equity for compensation; although there were many cases in which the party might be benefited by such interference, and in which an award of compensation would seem to be just. "Nevertheless," added the court, "were it once permitted that one man could volunteer his services to another, and coerce compensation, it would subvert the fundamental doctrines of contract, and open a door for incalculable mischiefs and litigations. The complainant's counsel are too sensible of this to assert that a mere volunteer can recover; hence they attempt to establish an agency in their client, and do not seem to perceive that to convert a volunteer into an agent, against the consent of the alleged employer, is but maintaining the principle abandoned, in different terms, differently applied."

In Blanchard v. Brown, 3 Wall. 249, the complainant had been defeated in an action of ejectment, and then filed a bill in equity, asking to have the estate upon equitable terms. The supreme court said that, having failed before the jury, he was estopped from investigating the same matters in another jurisdiction. In the ejectment case he risked his whole defense on the impeachment of his adversary's title for fraud, and, having been defeated, sought to have the question of fraud litigated in a court of chancery, which could not, under the circumstances, be done. In this case the defendants pleaded the statute of limitations, and relied upon adverse possession. The complainants successfully resisted on the ground that the defendants were not trespassers, nor holding adversely, but rightfully in possession as cotenants. It results that defendants are entitled to whatever equity they may have as cotenants to compensation for improvements. An obiter is to be found in a former opinion in this case, reported in 48 Fed. 137, to the effect that such relief can be afforded only upon cross bill. That proposition is supported by two or three authorities which were not at hand, but are cited in a footnote to section 504, Freem. Coten., which was cited by the court. Upon subsequent examination it was found that they were based upon local statutory rules of pleading, and in conflict with the general course of the authorities upon that subject. This is a forcible illustration of the unreliability of obiter dicta. The court is now clear that any equities to which the defendants may be entitled in this behalf may be allowed as incidental to the partition, under the defendants' general prayer for relief, and therefore that the citation from Daniell's Chancery Practice, above referred to, does not apply. The determination of the questions presented will depend upon the principles of equity, and the rules of decision applicable thereto.

Under the statutory provision (Rev. St. § 721) making the laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, rules of decision in trials at common law, in the courts of the United States, in cases where they apply, it has been repeatedly held that the construction of the statutes of the state relating to land are rules of property which the federal courts will recognize and follow.

In St. John v. Chew, 12 Wheat. 168,—one of the earlier cases,—the supreme court said that:

"Whether these rules of land titles grow out of the statutes of a state or principles of the common law adopted and applied to titles, can make no difference. There is the same necessity and fitness in preserving uniformity of decision in the one case as in the other."

In Miles v. Caldwell, 2 Wall. 44, the supreme court held that a claim for improvements made upon land in good faith by the complainant must depend wholly upon the statutes of Missouri, in which state the lands were situate. In Bucher v. Railroad Co., 125 U. S., at page 583, 8 Sup. Ct. 974, Justice Miller, delivering the opinion of the court, said:

"It is well settled that where a course of decisions, whether founded upon statute or not, have become rules of property as laid down by the highest

courts of the state, by which is meant those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto, they are to be treated as laws of that state by the federal courts."

The authorities to the same effect are collected in a note to section 375, on page 779, Fost. Fed. Pr. (2d Ed.). We must look, then, first to the decisions with reference to improvements made by the supreme court of Ohio, and applicable to this case.

In Taylor v. Foster's Adm'r, 22 Ohio St. 255, tenants in common held real estate under a will, which devised it to them in fee simple but subject to the contingency that, if either of them died without issue the survivor should take the whole estate. One of them having made permanent improvements on the land while the other was a minor, and without knowledge of the character of the title, mortgaged his interest in the real estate to secure a loan of money, and died without issue. The supreme court held that the improvements passed with the land, under the will, to the surviving tenant, and that neither the land nor the improvements could be subjected, under the mortgage, to the payment of the mortgage debt. Judge Day, in announcing the opinion of the court (the syllabus from which the above statement is taken being, under the rules of that court, the authoritative statement of the points decided), said that it was claimed that the improvements were made by Foster in good faith, believing himself to be a joint owner of the land, and that, therefore, on principles of natural justice, he had an equitable interest in the land to the amount of one-half of the value of the improvements, and added:

"The principle relied upon is undoubtedly recognized by courts of equity when resort is had to them for relief against a party in possession of land, who has made improvements under a belief of ownership of the land; for in such cases a party seeking equity must do equity. But this is not that case. Here a party, at best standing in the shoes of a tenant out of possession, invokes equitable relief. In Putnam v. Ritchie, 6 Paige, 390, Chancellor Walworth said that he had not 'been able to find any case, either in this country or in England, where the court of chancery had assumed jurisdiction to give relief to a complainant who has made improvements upon land, the legal title to which was in the defendant, where there has been neither fraud nor acquiescence on the part of the latter, after he had knowledge of his legal rights.' "

See, also, Corbett v. Laurens, 5 Rich. Eq. 301.

The judge then proceeded to say that it was well settled that no compensation could be had where the improvements were made with notice of the true state of the title. In that case Foster knew the nature of the title, and, to say the least, was sufficiently advised of its character to put him on guard as to its true legal effect, and it was held that improvements could not be subjected to the claim of his mortgage.

There are three reported cases in Ohio in which the right to equitable relief to improvers of real estate was recognized by the supreme court. The first is Bomberger v. Turner, 13 Ohio St. 263. In that case, lands fraudulently transferred by the instrumentality of a judicial sale descended to the heirs of the alienee, who, ignorant of the fraud, assigned the same in partition to one of their number,

who took possession, paid taxes, and in good faith made valuable improvements. A judgment creditor filed his petition to set aside the transfer for fraud, and subject the premises to the payment of his judgement. The court held that the heir, who, innocently and in good faith, had made the improvements for the benefit of the estate, was entitled to be equitably compensated out of the proceeds of the sale which was ordered. The court held that the fraud of the ancestor, of which the heir was ignorant when the improvements were made, should not deprive him of compensation for his expenditures; especially where the laches of the creditor left him for a series of years in possession of the premises, thereby inducing a belief that his title was indisputable.

In Preston v. Brown, 35 Ohio St. 18, it was held that the act for the relief of occupying claimants of land operates only in cases where the defendant in possession has been evicted by a title both paramount and adverse. A similar ruling has been made in other cases, and it is the settled law of Ohio. The occupying claimant law therefore has no bearing upon this case. In Preston v. Brown the court recognized the rule of the common law, subject to certain exceptions, that all erections or improvements made upon real estate become a part of the freehold, and the property of its owner. The court said that:

"Among the exceptions to the rule are those that arise at law, under the act for the relief of occupying claimants, and under the act creating liens in favor of mechanics in certain cases; and in equity in particular cases, where the provisions of the statutes do not apply. It also seems to be settled that a bona fide occupant, sued by the owner of the premises for rents and profits, may at common law recoup the value of the meliorations by him made while in the occupancy of the premises."

The court allowed the improvements also upon the application of the rule that, if an owner of an estate stands by and suffers another, acting in good faith, and without notice of his title, to place improvements thereon which add permanent value to the estate, such improvements will constitute a lien thereon. 2 Story, Eq. Jur. § 1237.

The third case is Youngs v. Heffner, 36 Ohio St. 232. That was a suit in partition. The plaintiff, the owner in fee simple of two undivided sevenths of a farm, had been absent and unheard of for nearly 30 years, when proceedings for partition were instituted by persons who would have been his heirs had he then been deceased. Under these proceedings, the premises, not being divisible without manifest injury to the value thereof, were sold by order of the court, and bid off by the defendant, who was the owner of the other five-sevenths of the farm, and who, after the purchase, made valuable improvements thereon. It was held that the defendant, by his purchase, acquired no title to the interest of the plaintiff in the land, but that in the partition he was entitled to the benefit of the improvements he had made to the extent that they enhanced the value of the premises. The court said that, whether the circumstances under which the plaintiff left his home and remained absent were such as to authorize the presumption of his death at the expiration of seven years was not material, since that presumption, whenever

it arises from any length of time, is but prima facie, and is wholly rebutted whenever it is made to appear that the person whose death is thus presumed is still living. That was a cause in which the defendant who had made the improvements, had no notice of the title of the plaintiff, and, on the other hand, had the right to presume that the plaintiff was dead.

It is not necessary to refer to the cases cited for the defendants in argument. None of them are Ohio cases. Searl v. School Dist., 133 U. S. 553, 10 Sup. Ct. 374, was much relied upon, and, if it were an authority binding in this case, would be very strongly in favor of the defendants. But it depends upon the interpretation of a statute of the state of Colorado, where the premises were situated, and it has no application here.

Clearly, upon the Ohio decisions, the rule adopted by this court in the McArthur Case,[1] and in other subsequent cases, is the correct one. Under that rule the defendants will not be entitled to any compensation for improvements made during the life estate of Maria Bigelow. They will be entitled to compensation for improvements made between the date of her death and the commencement of this suit, the defendants having, as they supposed, bought in all the outstanding interests in the land, and become the sole owners. The bringing of the suit was notice to them that there were interests outstanding which the court has recognized by its decree, and no compensation will be allowed for improvements subsequently made. The allowances for improvements will be measured by determining to what extent, up to, but not beyond, their cost, they have enhanced the present value of the premises. The defendants, having had exclusive possession, will not be allowed for taxes or assessments, excepting by way of offset to rents. The complainants will be entitled to rents, subject to allowances for taxes and assessments as above, from six years prior to the bringing of this suit.

JACKSON, Circuit Justice, concurs.