CHARLES E. ELLIS, *revived in the name of the Common-wealth Title, Insurance & Trust Company, and Franklin L. Lyle, as Executors, etc., Appellees,* v. ELIZABETH D. SNYDER *et al., Appellants.*

No. 16,341.

CHARLES E. ELLIS, *revived in the name of the Common-wealth Title, Insurance & Trust Company, and Franklin L. Lyle, as Executors, etc., Appellants,* v. ELIZABETH D. SNYDER *et al., Appellees.*

No. 16,343.

SYLLABUS BY THE COURT.

1. LIMITATION OF ACTIONS—*Suspension of the Statute.* A husband and wife executed a note secured by mortgage on their land, and the husband thereafter died, having previously conveyed the title to his wife. The widow rented the farm to her son-in-law, and during such tenancy the widow died. The son-in-law, with his wife, continued in possession of the farm, and before the expiration of five years from the maturity of the note made a small payment on the debt. They continued in possession for a number of years, until this action to foreclose the mortgage was brought, with the acquiescence of the brothers and sisters of the wife; and her husband, with her consent, made several payments upon the indebtedness and paid the taxes on the land, all of which payments were made from the proceeds of crops raised upon the land. No interval of five years elapsed between such payments. He neither paid nor contracted to pay any rent to any of the heirs. *Held,* that such payments prevented the running of the statute of limitation in favor of any of the heirs against the mortgage debt.

2. TENANCY IN COMMON—*Possession of Mortgaged Premises—Interest—Rent.* A tenant in common in possession of mortgaged real estate with the acquiscence of the other cotenants, and in the absence of any contract to pay rent, owes a duty to the other cotenants to pay the interest maturing on the mortgage and the taxes accruing on the land.

Appeal from Sumner district court. Opinion filed January 7, 1911. Modified.

*James T. Herrick,* and *Harold W. Herrick,* for the executors of Charles E. Ellis.

*Ed T. Hackney,* for Elizabeth D. Snyder *et al.*

The opinion of the court was delivered by

SMITH, J.: Both parties appealed from the judgment of the trial court, and by agreement the appeals were submitted together.

On February 1, 1889, John W. Gray and Elizabeth A. Gray, his wife, executed a mortgage on the land in question to secure the payment of a note for $2000, payable five years after that date, with interest. The Southern Kansas Mortgage Company was the mortgagee, but before the commencement of this action assigned the note and mortgage to Charles E. Ellis, who brought the action to foreclose the same. Both Gray and his wife died before the maturity of the note and mortgage. Before his death the husband conveyed the land to his wife. She died April 10, 1892, leaving as her only heirs at law Elizabeth D. Snyder (who had been theretofore married to one Bert Snyder), Tina Gray (who together with Elizabeth D. Snyder had attained her majority), and three sons and two other daughters, who were all minors. At a time prior to the death of Mrs. Gray, Bert Snyder had rented a portion of the land in question, and soon after her death he and his wife, Elizabeth, moved upon the land and continued to occupy it until this action was brought. Bert Snyder made an oral contract with the guardian of the minor children for the purchase of their interest in the land, conditioned upon the approval thereof and order of the probate court. No action, however, was taken by the court in relation thereto.

Bert Snyder borrowed money of the mortgagee to pay insurance, buy seed wheat, pay taxes, etc., from September 18, 1895, to February, 1900. He made payments from time to time to the mortgagee from October, 1895, to November, 1901, which were almost

entirely from the proceeds of wheat and corn raised on the farm. On November 14, 1896, he paid the mortgagee, from the proceeds of wheat, $44.20; and on December 20, 1896, from the proceeds of corn, $19.25. At neither of these dates was he indebted to the mortgagee on any account other than the mortgage. These two payments, aggregating $63.45, must be regarded as payments on the interest, and at the time the payments were made neither the principal of the mortgage debt nor any interest thereon had been due five years. Thereafter, from time to time, Bert Snyder borrowed further sums of money from the holder of the mortgage, and repaid certain amounts from the proceeds of the farm, until November 16, 1901, when the sum of the payments exceeded the amounts borrowed by over $700; but at no time did he pay an amount equal to the interest due on the mortgage.

Elizabeth Snyder objected to her husband's plan to buy out the interest of the minors in the land for $100, as he had agreed with the guardian, and to pay off the mortgage; but she signed with him chattel mortgages on the growing crops to enable him to carry out the plan, and she knew generally of the payments he made, and, from the general findings of the court against her, it must be assumed that it found that she acquiesced therein. The evidence, while conflicting, is sufficient to support such a finding. There is no evidence of any agreement that she should convey her interest to her husband. The payments were made in her behalf as well as in his, and were in fact her payments as well as his.

The other adult heir, Tina Gray, lived with the Snyders on the farm some time after the death of the mother and before she married William Marks. The undisputed evidence is that she was present when the tentative agreement was made between Bert Snyder and the guardian of the minors and agreed to deed her interest in the land to Bert Snyder, but said they

Ellis v. Snyder.

could not pay the mortgage and had better let it take the land. Mr. Bishop, the guardian, testified that he thought there was nothing in the land for his wards, never made any effort to get possession for them, and agreed, if the probate court would approve it, to sell their interest to Bert Snyder for $100. It thus appears that Bert Snyder and his wife continued in possession by the consent or acquiescence of all the other cotenants, and made the payments on the interest for the benefit, in part, of each. It also appears that the holder of the mortgage was about to foreclose it at the time this arrangement was made, and, relying thereon, forbore such action. Under such circumstances it would seem very inequitable, if not illegal, to permit the cotenants who paid nothing, years after, when changed conditions have greatly augmented the value of the property, to set up the statute of limitation and take their respective interests in the land, free of encumbrance, and thus not only debar the mortgagee from recovering a large portion of his just claim but also subject the interest of the cotenant who strove and paid, in part, to be entirely taken for the remainder.

It was held in *Clute v. Clute,* 197 N. Y. 439, as reported in a headnote in 27 L. R. A., n. s., 146:

"Interest payments upon the mortgage debt by the son of the mortgagor who, having been let into possession of the property during the lifetime of the mortgagor under an agreement to work it on shares, continues his possession after the mortgagor's death, with the acquiescence of his brothers and sisters, prevent the running of the statute of limitations in favor of the latter against the mortgage debt.

"A tenant in common in possession of mortgaged real estate owes the duty to his cotenant to pay the interest maturing on the mortgage."

(See, also, 2 Jones, Mort., 6th ed., § 1198; Freem. Coten. & Part., 2d. ed., § 371; *Hollister v. York and*

41—83 KAN.

*others,* 59 Vt. 1; *Eads v. Retherford et al.,* 114 Ind. 273.)

We have not been cited to, nor do we recall, any Kansas case that involves this question. The principle enunciated in *Clute v. Clute,* supra, and in *Lawton v. Adams et al.,* 13 Ohio C. C. 233, seems entirely just and equitable, when applied to the present case. In the case last cited it was said:

"Where one of the owners of the land comes to him and offers to pay upon the note (in this case one of the heirs), it would seem to be that upon principles of justice and equity, as between the mortgagee and these various persons holding an interest in the land, that payment by one should be held to be the joint act of all, a payment made for the purpose, primarily, of relieving the property from the debt; that is to say, that it is made to reduce the indebtedness upon the land, and is made for the benefit of all, and should be binding upon all." (p. 237.)

We hold, accordingly, that the action to foreclose the mortgage was not barred as to any one of the defendants in the court below. The case is therefore remanded, with instructions to render judgment in favor of the holder of the mortgage against all of the defendants.