# HACKETT v. LINCH ET AL.

(No. 2209; September 19, 1941; 116 Pac. (2d) 868)

290

For the appellants, the cause was submitted upon the briefs of *James T. McGuckin* of Sundance, Wyoming, and *John T. Milek* of Sturgis, South Dakota.

292

For the respondents, the cause was submitted upon the briefs of *E. E. Wakeman* of Newcastle and *Otis Reynolds* of Sundance.

BLUME, Justice.

The action was originally commenced by the plaintiff Della Hackett on September 10, 1929. Otis Reynolds appeared as her attorney. The lands involved herein were ordered to be partitioned between the parties by order of court on July 19, 1930. A writ of partition was issued on November 14, 1930. The commissioners of partition fixing the value of the property at $18,000, reported that it could not be partitioned in kind, but should be sold, which, by order of the court of January 6, 1931, was directed to be done. An order of sale was issued, the land sold for $12,000, but the bid was rejected by the court on September 8, 1931, and another order of sale was directed to be issued, to sell the land for not less than $12,000. Thereafter and on July 14, 1932, the plaintiff, appearing by Otis Reynolds, her attorney, asked a modification of the order of court last mentioned, asking that the court direct the sale of the property at not less than $5000. Nothing further was done in the case until November 22, 1938, when Myron W. Goodson, who was the grantee of the rights of Della Hackett, plaintiff, filed a petition in the case asking that an alias writ of partition be issued, and that the order limiting the price for which the land be sold be set aside. Goodson appeared by E. E. Wakeman as his attorney. The petition was granted, the land was sold to Myron Goodson for $6005, and the sale was confirmed by the court, without, however, distributing the proceeds at that time, the court retaining jurisdiction to do that thereafter. An appeal to this court from the order of confirmation was taken by Louis E. Schloredt and Cecelia Schloredt, parties to the action, but the action of the trial court was affirmed (104 P. (2d) 164). Thereafter, by an order of De-

cember 20, 1940, the court made an order of distribution of the proceeds of the sale, and from that order Louis E. Schloredt and Cecelia Schloredt have appealed.

■ The court allowed Otis Reynolds a fee of $250 on account of acting as attorney for Della Hackett in the original proceeding. Exception is taken to this order. It is not claimed that the amount is excessive, but that the court had no right to allow him anything at all. Section 89-3823 provides that in an action for partition, the court shall tax the costs equitably and may allow "a reasonable counsel fee, which shall be paid to the plaintiff's counsel, unless the court award some part thereof to other counsel for service in the case for the common benefit of all the parties." It appears not only that Otis Reynolds was the plaintiff's attorney when the action was originally started herein, up to at least July, 1932, and conducted the usual litigation in such action, but that adverse interests were at that time asserted by Louis E. Schloredt, which were defeated, presumably, by the help of plaintiff's attorney. We cannot say that, in view of our statute, the trial court abused its discretion.

■ Louis E. Schloredt claimed an interest in the funds distributed by the court under the following facts: In 1932, the county treasurer of Crook County, Wyoming, where the land in question is situated, sold a three tenths interest therein on account of delinquent taxes against it, being the shares of Della Hackett, Eva Worrell and the estate of Elizabeth Fowler in the land. Schloredt was administrator of the estate just named. A tax-sale certificate was issued to Crook County, which was later assigned to Louis E. Schloredt. Thereafter, Schloredt commenced proceedings for the acquisition of a tax deed for this interest in the land, and published a notice which recited that "anyone entitled to redeem may make redemption at any time up to taking tax deed; that the application for issuance of

tax deed to the undersigned for said premises will be made on June 25, 1938, and at which time the period for redemption will expire." The publication of notice was made for three weeks, as the statute required, and the last publication was more than three months prior to June 25, 1938. In the afternoon of June 25, 1938, Myron E. Goodson, resident of Crook County, who had an interest in the land as shown by the records of Crook County, redeemed from the tax sale, paying, as required by the county treasurer, the sum of $185, and a certificate of redemption was issued. It seems that in the meantime a form for treasurer's deed had been filled out, signed and acknowledged, and Mrs. Schloredt testified that it was delivered to her. This is disputed by the county treasurer. It is claimed that the redemption was made too late, and that Schloredt is entitled to the deed, and that its actual delivery makes no difference. Section 115-2343, Rev. St. 1931, as amended by Chapter 37 of the Session Laws of 1937, provides among other things as follows:

'Notice of expiration of time for redemption shall be required of an assignee of such county, by personal service or registered mail, of a written or printed or partly written and partly printed notice of such purchase on every person in actual possession or occupancy of such land or lot, and also the person in whose name the same was taxed or specially assessed, if upon diligent inquiry he can be found in the county, and upon the record owner and the mortgagee, if any, at their addresses if known or if disclosed by the public records, at least three months before the expiration of the time of redemption from such sale, on which notice shall be stated when such land or lot was purchased by the county, and by such assignee of the county, in whose name taxed, a description of the land or lot so purchased, for what year taxed or specially assessed, and when the time for redemption will expire and application for deed will be made."

It may be noted that the statute requires that a

personal notice be served upon or mailed to the "record owner and the mortgagee," if their address is known. In this case Myron E. Goodson's address was well known, and notice to him should have been given to him as required by the statute, which was not done. At least no proof thereof was furnished. Goodson had acquired the interest of Eva Worrell and Della Hackett and part of the Fowler interest. No tax deed, then, would have been valid at least as to these interests. Authorities seem to be divided as to whether or not it would have been good as to any interest. 61 C. J. 1260. Schloredt was administrator of the Fowler estate, and hence could not obtain a valid tax title as to that interest. 61 C. J. 1201. Furthermore, the statute requires that the notice shall state "when the time for redemption will expire and application for deed will be made." The notice published in this case was in conformity with this requirement, giving June 25, 1938, as the date. This provision was not in the section as contained in the Revised Statutes of 1931, but was inserted as the section was amended by Chapter 32 of the Session Laws of 1935. It was evidently intended to give specific notice of the exact time of the expiration of redemption. A statute fixing the time for redemption should be liberally construed in favor of the owner. Barrett v. Barrett, 46 Wyo. 84, 23 P. (2d) 857, and cases cited; Foster v. Bowman, 55 Iowa 237, 7 N. W. 513; Jackson v. Maddox, 53 Tex. Civ. App. 478, 117 S. W. 185. The law does not take cognizance of fractions of a day, unless there is sufficient reason therefor. 62 C. J. 978. There is no sufficient reason in the case at bar. When the notice, accordingly, stated that the time for redemption would expire on June 25, 1938, the law gave the party entitled to redeem the whole of that day. The fact that June 25, 1938, was also the day on which application for a tax deed would be made is not, necessarily at least, inconsistent there-

with. The statute does not require that the application must be granted on that day. Construing the statute liberally in favor of the party entitled to redeem, we must hold that the application could not be acted on and granted, until full opportunity for redemption, as above mentioned, was given.

■ Louis E. Schloredt claims to be entitled to a part of the funds distributed herein by reason of the fact that he redeemed the land from two other tax sales of the land made in 1932 and 1933, evidently for the taxes assessed against the land while Schloredt was in possession thereof. One of these redemptions was made on March 14, 1938, and he paid the sum of $367.66; the other redemption was made, in the sum of $328.85, on September 14, 1938. The certificates of redemption recite that the redemption was made by Louis E. and Cecelia Schloredt (his wife). This claim, in the total sum of $695.51, has given us no little trouble. While the certificates of redemption recite that the redemptions were by Schloredt as well as by his wife, the record indicates that it was in fact made by Schloredt, or with his money. He alleged that they were made with his "personal money." Mrs. Schloredt was on the witness stand and did not claim that she contributed anything toward the redemptions. Nor does the brief of the appellants herein claim any reimbursement for anyone except Louis E. Schloredt. It is claimed in the brief of the respondent herein that Schloredt is not entitled to be reimbursed because he was a mere stranger to the title, and was an intruder and, therefore, was not entitled to redeem or to be reimbursed. It is true that it appears from 61 C. J. 1245 that a mere intruder is not entitled to reedem. But it is not as clear as counsel for respondents seems to think that Schloredt was such. In Sanders v. Ellis, 42 Ark. 215, it was held that "almost any right, either at law or in equity, perfect or inchoate, in possession or in action,

or whether in the nature of a charge or encumbrance on land amounts to such an ownership as will entitle the party holding it to redeem." See also Seger v. Spurlock, 59 Ark. 147, 26 S. W. 819; Jackson v. Maddox, 53 Tex. Civ. App. 478, 117 S. W. 185. Schloredt was in possession of the land as administrator of the Fowler estate, and also, it seems, of the McMichael estates, which also had an interest in the land. He had also, it seems, a lease to the land from David Linch, who owned the one fifth interest in the land. It is stated in 62 C. J. 540 that "leasing of their undivided interests by fewer than all of the tenants in common operates to make the lessees tenants in common with the non-leasing tenants, and such lessees on entry will have the same right with relation to the other cotenants as the lessors had." In 61 C. J. 1245 it is stated that a lessee has the right to redeem from a tax sale. So we are hardly prepared to hold that he was a mere intruder in redeeming from the tax sales. Whether or not the right to be reimbursed is co-extensive with the right to redeem—whether for instance he should be entitled to be subrogated to the interests of the parties whom he represented, when he paid out his own money —is another question. However, whatever his relationship to the land and to the various parties interested in the land may be—whether he should be considered a true cotenant or not—it would seem in any event that he could not have a greater right to reimbursement than the right possessed by cotenants. He is in this case asking for reimbursement out of the funds resulting from partition. In other words, he asks the same right which a cotenant has. He must, then, be subject to the same duty. It appears herein that he and his family had exclusive possession of the land here involved and used it all the time commencing with about 1930 to the fall of 1939. That substantially appears from his own pleadings herein. We must,

accordingly, determine whatever rights he has for reimbursement in the light of that fact.

The rule has been announced in quite a number of cases that while a cotenant has the right when he is sought to be charged with rents and profits received by him, to have the taxes paid by him deducted therefrom (47 C. J. 477), when no such rents and profits are sought to be recovered, he is not entitled to be reimbursed for taxes paid on the theory that a cotenant in exclusive possession should pay the taxes. Thus in Stevens v. Melcher, 152 N. Y. 551, 565, 46 N. E. 965, it is stated that "ordinarily the duty devolves upon tenants in common in possession, life tenants, or trustees for equitable life tenants, of preserving the premises, defraying the expenses of ordinary repairs, and of paying the taxes and the accruing interests upon mortgages which may encumber the property." In Clute v. Clute, 197 N. Y. 439, 90 N. E. 988, 27 L. R. A. N. S. 146, the court stated that "he (the cotenant) being in sole possession and receiving all of the profits derived from the farm, is deemed to have undertaken to discharge certain duties to his cotenants which are analagous to that which a tenant for life owes to his reminderman—that of preserving the property by making needful, ordinary repairs, payment of taxes and other annually maturing liens, such as interest upon a mortgage." In Cole v. Cole, 108 N. Y. S. 124, the court stated that "the defendants claim that, inasmuch as they lived in and occupied this place and had the benefit of its use without the payment of rent to their cotenants, they are equitably chargeable with the duty of paying taxes and making ordinary repairs. This is the law * * * This is an equitable rule. A tenant ought not to be permitted to enjoy the benefit of the use and occupation of real property without bearing the burdens of keeping the premises in ordinary repair and keeping down the taxes on the same." That, too,

was held to be the rule in Cardwell v. Clark, 158 N. Y. S. 300; Wheeler v. Handy, 123 Misc. Rep. 775, 206 N. Y. S. 148. In Dubois v. Campau, 24 Mich. 360, 369, the court stated that "justice and good faith to other owners or tenants require that if one tenant in common is in possession having the use of the whole * * * he shall keep down the taxes on the whole during the occupancy." In Schilback v. Schilback, 171 Md. 405, 189 Atl. 432, 434, the court stated that "when one coparcer pays obligations such as taxes, insurance and ordinary repairs, which may be regarded as carrying charges, he does not have recourse against the other for contribution without an agreement from the other to pay." In Mastbaum v. Mastbaum, 126 N. J. Eq. 366, 9 A. (2d) 51, the court stated that "a tenant in common who is in sole possession of the common property, is under a duty to his cotenants to preserve the property by making needful ordinary repairs, and paying taxes, mortgage interest and insurance premiums. * * * This duty rests upon the receipt of benefits, actual or presumed, equal to the cost of preservation of the property." In Gordon v. McLemore, 237 Ala. 270, 186 So. 470, the supreme court of Alabama held that "we think the rule in 7 R. C. L. 824 is equitable and reasonable, and is approved by us as follows: 'A cotenant in sole possession and receiving all the profit derived from the property * * * is deemed to have undertaken the discharge of certain duties to his cotenants, such as preserving the property by making needful ordinary repairs * * * and payment of taxes and other annually maturing liens,' and is not entitled to contribution from them." To a like or similar effect are McClasky v. Barr, 62 Fed. 209; Delta Cotton Oil Co. v. Lovelace, 189 Miss. 113, 196 So. 644; Ellis v. Snyder, 83 Kans. 638, 112 Pac. 594, 32 L. R. A. 253; Shelangowski v. Schrack, 162 Iowa 176, 143 N. W. 1081 (involving ordinary repair) ; Cooley, Taxation, (4th ed.) Sec. 601.

It may be that the rule should not be held to be absolute, and that, if it appears that the value of the use is not equal to the amount of the taxes paid, reimbursement should be made for the amount of the difference and to the extent of equalizing the interests of the cotenants. That is intimated in Gearhart v. Gearhart, (Mo.) 213 S. W. 31, 6 A. L. R. 291; Patterson v. Miller, 154 Ark. 124, 241 S. W. 875. And if that should be the rule, the question arises as to who has the burden of showing such differences. The question was answered in Ward v. Pipkin, 181 Ark. 736, 27 S. W. (2d) 523, where the court stated that "it is not shown what the rental value is * * * In the absence of showing to the contrary, it will be presumed that the rental value was sufficient to pay the taxes." We are not prepared to hold that the rule is unreasonable. That is particularly true in the case at bar. Schloredt, in his answer which he filed in this case on March 29, 1930, claimed that the value of the lease on the land was worth $1000 per annum. If it was worth only a tenth of that amount, the resulting sum would exceed the amount of the taxes paid by him. We cannot, accordingly, say that the court erred in not directing that he be reimbursed for the amounts which he paid for the redemptions above mentioned.

■ The lands partitioned in this action were originally owned by one John V. Linch. He died. One of his heirs was one Eva Worrell, and entitled to a 1/10 interest in the land. About 1925 Eva Worrell made an assignment of her interest to David Linch, another heir of John V. Linch. On January 20, 1938, Eva Worrell executed a warranty deed to her one tenth interest in the land to Myron W. Goodson. The deed was duly recorded on January 25, 1938. On March 22, 1938, David Linch conveyed to Mrs. Schloredt the one tenth interest "obtained from Eva L. Worrell by assignment." The deed was thereafter duly recorded. The

question accordingly is, whether Myron W. Goodson or Mrs. Schloredt own this interest in the land. It is claimed by respondent herein that this interest was adjudicated in this action in favor of Eva Worrell in the decree of the court entered July 19, 1930. And that seems to be true. Eva Worrell and David Linch both were parties to the action. The petition, filed September 10, 1929, alleged that Eva Worrell had a one tenth interest in the land. The answer filed March 29, 1930, among others, on behalf of David Linch, specifically denied that she owned this interest but that it had been sold and transferred and assigned to David Linch. In the deposition of the latter taken in the case it appears that the assignment by Eva Worrell to him was taken as security; that the money borrowed in that connection had been paid off, although she still owed him other money. In the decree above mentioned, the court awarded the interest to Eva Worrell. We cannot accept the view of counsel for appellant, that the one tenth interest then adjudicated is a different interest from that concerning which Mrs. Schloredt gave testimony in the hearing for the distribution of the proceeds of the sale of the lands.

■ The court held that Cecelia Schloredt was entitled to 107/300th interest in the land, and distributed to her an amount of money corresponding thereto, subject to deductions which are not questioned. This interest appears to be made up of the following interests, acquired by her from the heirs of John V. Linch, namely, 60/300th from David Linch; 35/300th acquired from Raymond McMichael, which he had in his individual right and as heir of Harry and John McMichael; and 12/300th acquired from Lottie Dare, heir of John V. Linch. In addition to that Mrs. Schloredt acquired 8.5/300ths interest in the land from Virginia Davis, heir of the Fowler estate. The court, however, distributed the interests of the heirs of the Fowler estate,

namely 60/300th, including the interest of Virginia Davis, to the administrator of the Fowler estate. That estate was not yet settled at that time. We think the court's action was correct in this respect, and Mrs. Schloredt can protect herself in that connection by appearing in the matter of the Fowler estate. In addition to the foregoing interests Mrs. Schloredt acquired 3/300th interest from Mary Blank, heir of John V. Linch, and 3/300th interest from Albert Shute, heir of John V. Linch. Deeds from these heirs appear in the record. They appear to be duly signed, and acknowledged. They were identified by Mrs. Schloredt while on the witness stand and were admitted in the record in this case without objection. Notwithstanding that, these interests were awarded to Mary Blank and Albert Shute respectively. We find no explanation thereof in the record or in the brief of counsel for respondents, and in the absence thereof, we must hold this to be error.

It is, therefore, directed that the interests of Mary Blank and Albert Shute should be awarded to Mrs. Schloredt, and the distribution of the fund involved herein be corrected accordingly, and in doing so the costs of this appeal should be taken into consideration, one-third thereof to be paid by Mrs. Schloredt and two-thirds by the respondents. As thus modified, the judgment of the trial court is affirmed.

*Modified and Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.