# BARRETT, ET AL. v. BARRETT, ET AL.

(No. 1794; July 5, 1933; 23 Pac. (2d) 857).

For the plaintiffs and appellants there was a brief and oral argument by *Mr. Walter Q. Phelan,* of Cheyenne, Wyoming.

For the defendants and respondents there were briefs and oral argument by *Mr. T. S. Taliaferro, Jr.*, of Rock Springs, Wyoming.

RINER, Justice.

This case is before the court upon direct appeal from a judgment of the District Court of Sweetwater County. The appellants, as plaintiffs below, brought suit against the respondents, as defendants, their petition setting forth two alleged causes of action. Summarizing, the first of these states that Mary Barrett died on September 15, 1930, leaving, as a part of her estate, some 7,974 acres of land in the county aforesaid; that thereafter her will was admitted to probate and the plaintiffs, as executors thereof, were issued letters testamentary, and that they are also heirs at law and "sole legatees and distributees" of all her estate; that prior to her death, the said Mary Barrett owned and was in possession of the real estate above mentioned and that plaintiffs have succeeded to her rights therein as the sole owners thereof; that the defendants, the First National Bank of Green River, a national banking corporation whose place of business is at Green River, Wyoming, the Big Sandy Livestock Company, a Wyoming corpora-

tion, and James Barrett, each claim an interest in said real estate adverse to plaintiffs', said claims being without right and said defendants having no title or interest whatsoever in this property. The second cause of action sets forth an alleged trespass upon said real estate by said defendants, commencing in the months of December, 1930, and January, 1931, and continuing until about June, 1931, through driving a large number of sheep thereon to plaintiffs' damage. The petition prayed that defendants be required to set forth the nature of their claims, that these be adjudged invalid as against the plaintiffs' and that the latter be given judgment for $2500 damages on their second cause of action.

The answer of the First National Bank of Green River, aside from denials of the allegations of the petition setting up plaintiffs' interest in the premises, asserts a claim in said land by virtue of a mortgage given it thereon by its co-defendant James Barrett, and denies having any connection whatsoever with the alleged trespass pleaded by the plaintiffs.

The answer of the Big Sandy Livestock Company, denying generally the rights pleaded by plaintiffs in their first cause of action, asserts a lease ever since January 24, 1931, of all real estate aforesaid, as made to it by its co-defendant James Barrett who, it is alleged, was then in the absolute possession of said land; that on the date last mentioned, it went into possession of said lands and holds them under said lease, thereby claiming an interest therein. A general denial is interposed to plaintiffs' second cause of action.

The answer of James Barrett denying generally the rights alleged by the plaintiffs in their first and second causes of action, avers that the lands aforesaid were sold on November 1, 1926, to the County of Sweetwater, Wyoming, for taxes; that they then be-

came the property of that county; that they were never redeemed from said tax sale and that, on January 24, 1931, Sweetwater County, for a stated valuable consideration, sold and deeded the lands to him and that he is now the owner thereof in fee by virtue of the deed of said county duly executed by its board of county commissioners. He admits that he leased said premises to the Big Sandy Livestock Company for a valuable consideration and "that said lease is still in full force and effect," this being averred as an exception to his allegation that "as to whether the defendants, Big Sandy Livestock Company and the First National Bank of Green River, claim an estate or interest in the said real estate, this defendant has no knowledge or information sufficient to form a belief, and, therefore, denies the same."

Replies were filed by the plaintiffs to each of these separate answers. The portions of the reply to the answer of James Barrett material to be considered are, briefly, denials of his ownership at any time of the property described in plaintiffs' petition, and denials of right to its possession at the time of the alleged trespass. It is admitted that he claims his interest in the land under a tax deed made and delivered by the county treasurer of Sweetwater County and a deed executed and delivered to him by the county commissioners of said county. It is admitted, also, that the aforesaid lands were subject to taxation by Sweetwater County for the year 1925 and that the treasurer of said county attempted to make a sale to the county on or about November 1, 1926, for the unpaid taxes due on said lands for the year 1925, but it is denied that said sale was valid, it being alleged that the attempted sale was illegal and void upon a number of grounds, among them being, "for the reason that the Treasurer of Sweetwater County, Wyoming, failed to give and publish proper notice of said sale

as required by law." Plaintiffs admit that the County of Sweetwater, through its county commissioners, executed and delivered to the defendant, James Barrett, a purported deed for the lands in controversy, but deny its validity, alleging that:

"said instrument was not, and is not, in the form required by the laws of the State of Wyoming and that said instrument was not made, executed and delivered in the manner and at the time described by law, and that said instrument did not and does not constitute a valid commissioners' deed, and that said instrument did not transfer or convey to the defendant James Barrett, any right, title or interest in the lands described in the plaintiffs' petition."

Plaintiffs further state that they are

"ready, willing and able to pay the amount of the delinquent taxes due upon the lands described in the plaintiffs' petition, together with interest and the penalty thereon, and that they herewith tender into Court the amount of money which will be actually due by reason of said delinquent taxes, interest and penalty at the time of the rendition of the decree herein and said plaintiffs pray that the court ascertain and determine the amount actually due and designate the person to whom said money should be paid and order the payment thereof."

The replies to the separate answers of the First National Bank of Green River and the Big Sandy Livestock Company, while admitting the execution of the several instruments under which they claim their respective interests in these lands, in substance, put in issue the validity of any rights asserted by them thereunder, the invalidity of these rights being maintained on account of the alleged void tax sale and void deed to James Barrett, as above described.

After a trial to the court, a decree was entered wherein it was found that the deed of the board of

county commissioners of Sweetwater County, of date January 24, 1931, to the defendant, James Barrett, was a "good and valid" instrument transferring to him all the title said county obtained to the lands in controversy by virtue of the sale thereof by the county treasurer for the 1925 unpaid taxes thereon, said sale being also found to be "good and valid." A finding was accordingly made that the plaintiffs take nothing and that the defendants recover their costs.

It is apparent that, as the rights of the defendants and each of them depend upon the validity both of the tax sale and the commissioners' deed to James Barrett mentioned above, the question for disposition is whether the record before us establishes that validity. Our examination of the facts and law in the case as submitted has convinced us that this question must be answered in the negative.

In Davis v. Minnesota Baptist Convention, 45 Wyo. 148, 16 P. (2d.) 48, 52, it was pointed out that one claiming title under a tax sale must prove that each step in the proceeding was regularly taken and that mandatory statutory provisions, such as giving proper notice of the tax sale, were strictly followed. In that case, it appeared that there was no proof of posting the notice of tax sale "on the door of the courthouse or building commonly used therefor, for four weeks before the day of the sale," as required by section 2877, Wyo. Comp. St. 1920, as amended by Laws Wyo. 1923, ch. 70, Sec. 12 (now Wyo. Rev. St. 1931, Sec. 115-2322), although there was proof of the publication of such notice in a newspaper for the necessary period. Affirming the judgment of the District Court of Laramie County, we held that the evidence in the case had failed to establish a valid tax title.

In the case at bar, respondents concede that no proof was made either of the legal newspaper publication of the notice of the 1926 tax sale of the lands con-

cerned, for the full period, or of the posting of such notice as the law directs. Necessarily, the conclusion reached by us in the case last above cited must be reached here, as we have no doubt of its correctness.

Our attention is directed by respondents to the provisions of sections 115-2339 and 97-112, Wyo. Rev. St. 1931. We consider that they do not affect the matter now at bar, the first section cited merely making the books and records of the clerk of the board of county commissioners and county treasurer, or copies thereof, sufficient evidence "to prove the sale of any real property for taxes," and the second section referred to, providing for the introduction in evidence of instruments concerning lands in this state, which are "executed, acknowledged, attested, or proved in accordance with the laws of this state" the effect of such evidence being made subject to rebuttal. These statutes do not change the rule respecting the burden of proof relative to tax titles announced in Davis v. Minnesota Baptist Convention, supra. It is said for respondents that "the State of Kansas has long held that tax titles do shed light upon themselves" and certain cases from that state are cited. But like a great many other states, Kansas for a long time has had a statute providing that when a duly acknowledged tax deed has been executed to the purchaser at tax sale, "such deed, duly acknowledged, shall be *prima facie* evidence of the regularity of all proceedings from the valuation of the land by the assessor, inclusive, up to the execution of the deed, and may be recorded with the like effect as other conveyances of land." Kan. Gen. St. 1901, Sec. 7676; Kan. Rev. St. 1923, Sec. 79-2501. A statute of this character does change the rule as to the burden of proof in establishing the regularity of the proceedings prior to the issuance of a tax deed. 61 C. J. 1376, 1377, Secs. 1954, 1955; 26 R. C. L. 424, 425, Sec. 382; 4 Cooley on Taxation (4th

Ed.), Sec. 1551. We have no such statute.

It will be recalled that the plaintiffs offered to redeem the lands in question by paying the amount of the delinquent taxes thereon together with interest and penalty, and that right, we think, should have been accorded them. It appears from the recitals of the county commissioners' deed and the deed of the treasurer of Sweetwater County to that county, in evidence, that the lands aforesaid were sold November 1, 1926, for the 1925 taxes thereon. Assuming this to be so, although there is some dispute as to whether the proper proof thereof was made, it appears, also, that not until January 24, 1931, did the county treasurer of Sweetwater County undertake to convey by tax deed to said county the lands in dispute. It further appears that the same day, January 24, 1931, the board of county commissioners of the County of Sweetwater executed to James Barrett, above named, their "County Commissioners' deed" for said lands. At the time of the tax sale held by the county treasurer, there were in force the following statutes concerning the purchase by the county, the management and disposition thereof, and redemption of lands not sold at tax sale:

"§ 2894. At the tax sale of each year, in each county of this state, any real estate that cannot be sold for the amount of taxes and cost of advertising due on the same, at the time of such sale, or on which no bids are offered, shall be bid in by the county treasurer, and shall become the property of the county. (L. 1899, c. 66, § 1; R. S. 1899, § 1900; C. S. 1910, § 2438).

"§ 2895. Real estate so bid in shall be assessed each year and taxes placed thereon the same as other real estate, but shall be placed by itself on a separate tax roll and assessment list, and the valuation of all such property shall not be reckoned as a part of the valuation of said county nor any return thereof be made to the state. (L. 1899, c. 66, § 2; R. S. 1899, § 1901; ;C. S. 1910, § 2439).

"§ 2896. After such real estate has become county property, the county commissioners of the county owning such property, shall have authority to dispose of the same at any time, at either public or private sale. If sold at public sale, said commissioners shall have the right to reject any or all bids, and may continue to offer the same for sale, until the same shall be disposed of. (L. 1899, c. 66, § 3; R. S. 1899, § 1902; L. 1901, c. 36; C. S. 1910, § 2440.)

"§ 2897. The original owner of any such real estate, so bidden in by the county, shall have two years from the date of such purchase by the county in which to redeem the same. If redeemed from the county the price shall be the purchase price paid by the county, together with the accrued costs up to the time of redemption and eight per centum per annum on such sum. If the said real estate has been disposed of by the county, then the original owner may redeem from such purchaser in the same manner as though such purchaser had bidden in said property at tax sale. After the expiration of two years from the date of sale by the county, of any such real estate, to any private purchaser, it shall be the duty of the county treasurer to make, execute and deliver to such private purchaser a tax deed for any property so sold. (L. 1899, c. 66; § 4; R. S. 1899, § 1903; C. S. 1910, § 2441.)"

Under these provisions, as we understand them, it was not required that any deed or certificate of sale be given by the county treasurer to the county when, obeying the mandate of the law, he bid in for the county the lands unsold at a tax sale. The title thereto passed to the county by operation of law immediately upon the act of the treasurer. It is unnecessary, therefore, to consider the effect of the failure of the treasurer of Sweetwater County to give a conveyance or certificate of sale to the county prior to January 24, 1931.

Sections 2894, 2896, and 2897 were each amended by Laws Wyo. 1929, ch. 68, but section 4 of that chap-

ter enacted that:

"The provisions of Section 2894, 2896 and 2897, Wyoming Compiled Statutes, 1920, as amended and re-enacted herein, shall not apply to any sales made prior to May 1, 1929."

As section 2894 is specifically mentioned in the section just quoted, the "sales" referred to in the quoted language obviously meant the usual yearly tax sales held by the treasurer for unpaid and delinquent taxes. The legislature was clearly formulating rules for the future and not with the idea of interfering with the tax sale machinery of previous years. Section 2897, as amended by chapter 68, supra, was itself again amended by chapter 123, Laws Wyo. 1931. But that act of the legislature was not approved until March 6, 1931. The attempted sale by the County of Sweetwater to James Barrett, having been consummated by the commissioners' deed, of date January 24, 1931, it is apparent that, in considering the rights of the parties touching the matter of redemption of the lands involved and the validity of the commissioners' deed to James Barrett, the law in force at the time of the sale on November 1, 1926, must be consulted, and especially section 2897, Wyo. Comp. St. 1920, quoted above.

Section 2897, in the first two sentences thereof, deals with redemption by the original owner of the real estate from the county, where the latter has purchased the property under section 2894, supra. It fixes two years from the date of the county's purchase as the period in which this may be done. The contention is made for respondents that, in the case at bar, the two years from the date of the county's purchase at the tax sale having elapsed without redemption by the owners of the property described in the petition, their rights in that respect are in conse-

quence cut off. But the last two sentences of the section aforesaid give, also, a right of redemption from a purchaser of the property from the county and provide for its exercise. The section concludes with the significant language:

"After the expiration of two years from the date of sale by the county, of any such real estate, to any private purchaser, it shall be the duty of the county treasurer to make, execute and deliver to such private purchaser a tax deed for any property so sold."

If respondents' contention were to be upheld as sound, then it would follow that the plain import of the last two sentences of the section would have to be disregarded, and the two years lapse of time before the issuance of a tax deed to the purchaser from the county, after he has paid his money, treated as a meaningless delay, accomplishing no purpose whatsoever. The canons of statutory construction do not allow this to be done. In construing statutes generally, it is a cardinal rule that "significance and effect shall, if possible, be accorded to every section, clause, word, or part of the act." 25 R. C. L. 1004, § 246, and cases cited. In considering redemption statutes in particular, they are to be regarded favorably and construed liberally in favor of the redemptioner. Burns v. State, 25 Wyo. 491, 504, 173 P. 55; 785, 786; 61 C. J. 1243;; 26 R. C. L. 427; 4 Cooley on Taxation (4th Ed.), § 1562.

In a law of the State of Kansas, relative to the disposition of unredeemed lands bought in by a county, it was provided as follows:

"Whenever any lands or town lots that may have been or shall hereafter be sold for any taxes due thereon that have been or shall hereafter be bought in by any county for such taxes are or hereafter shall be unredeemed for three years from date of sale, and

no person shall offer to purchase the same for the taxes, penalties and costs due thereon, the county commissioners of the county where such lands or town lots are located, may permit the owner, his agents or attorney, to redeem the same, or may authorize the county treasurer to execute and the county clerk to assign tax-sale certificates for such lands or town lots for any sum less than the legal tax and interest thereon, as shall be in their judgment for the best interest of the county, which assignment shall have the same force and effect as if the full amount of all taxes, interest and penalties had been paid therefor: *Provided, however,* That no deed shall be issued upon any certificate so assigned until six months after such assignment has been made. (L. 1879, ch. 43, § 1, as amended by L. 1893, ch. 110, § 4; May 18.)"

Section 7672, Kan. Gen. St. 1901. Construing the effect of the proviso clause of this statute which delayed for six months the issuance of a deed, as it affected the land owner's right of redemption, the Supreme Court of Kansas, in James v. Manning, 79 Kan. 830, 101 P. 628, 629, said:

"The tax deed was what is called a compromise deed, being issued under section 7672, Gen. St. 1901. In such section the law provides as follows: 'No deed shall be issued upon any certificate so assigned until six months after such assignment has been made.' The certificate was assigned March 18th, and the deed was issued on September 18th following. Was the deed prematurely issued? Had the six months expired before the day upon which the deed was issued? It was the manifest intent of the statute to give the owner of the land full six months after the assignment of the certificate in which to redeem before being finally cut off by the execution of a deed; and the language of the statute should be liberally construed with the view of preserving the owner's right in this respect. We think the statutory rule that the first day should be excluded and the last day included (section 5218, Gen. St. 1901) is applicable here. Under this

rule the deed was issued before the expiration of six months after the assignment of the certificate, and is, for that reason, void."

See also Morris v. Wicks, 81 Kan. 790, 106 P. 1048, 26 L. R. A. (N. S.) 681, 19 Ann. Cas. 319.

So, in Burns v. State, supra, where the statute provided that real property might be redeemed from tax sale "at any time before the expiration of three years from and after the date of the sale," but provided, also, that the purchaser at a tax sale or his assignee "may at any time within two years after the expiration of the period of redemption, serve or publish" the required notice, this court held:

"that the 1901 amendment of the statute authorizing the purchaser at a tax sale of real estate, or his assignee, to serve or publish the required notice to entitle him to a tax deed at any time within two years after the expiration of the period of redemption, in effect extended the time for redemption until the date stated in such notice."

Mr. Chief Justice Potter, in the course of the opinion filed on petition for rehearing, said:

"The Legislature might have fixed the time for redemption by referring to the time of service of notice upon the owner. (Arthurs v. Smathers, 36 Pa. St. 40; 37 Cyc. 1396, 1397, and cases cited.) And by our statute providing for such notice the Legislature might properly have expressly declared that the right to redeem should continue until the date of the expiration of the time for redemption stated in the notice. Although the statute does not expressly so declare, we think it is implied, and that the statute is to be understood and construed as so providing. Such a statute should be liberally construed in the interest of the owner."

Likewise, in the case at bar, we think that, while the statute, section 2897, supra, does not in terms thus

state, we consider it is implied that the land owner shall have the right of redemption for the period of two years from the date of sale by the county to any private purchaser, of lands bid in by the treasurer at yearly tax sale. This being our view, as already intimated, the plaintiffs in the instant case having offered to redeem their lands within that period, they should have been permitted to do so. The deed from the board of county commissioners of Sweetwater County to James Barrett was void because of its having been issued prematurely and before the time for redemption had expired. James v. Manning, supra; Morris v. Wicks, supra; 61 C. J. 1335, and cases cited.

The case of McCague Investment Co. v. Mallin, 25 Wyo. 373, 170 P. 763, has been cited as throwing much light upon the questions involved in this case. We do not think it does. There, no effort to redeem from the tax sale was made until long after the lapse of more than two years from the date of sale by the county of the property in dispute to Mallin, hence it is plain that the right of redemption had lapsed and it was so regarded in the opinion in the case.

We conclude, therefore, that the decree of the district court must be reversed and a new trial granted to determine the amount necessary to be paid by plaintiffs in order to redeem the lands aforesaid and also to ascertain the amount of damages, if any, suffered by plaintiffs on account of the trespass alleged in their second cause of action, and the party or parties liable therefor.

*Reversed.*

KIMBALL, C. J., and BLUME, J., concur.