202 P.3d 1053 (2009)
2009 WY 29
Philip WHITE and Kathleen D. White, Appellants (Defendants),
v.
Willard M. WOODS and Cynthia S. Woods, Appellees (Plaintiffs).
John D. Adamson, Appellant (Defendant),
v.
Willard M. Woods and Cynthia S. Woods, Appellees (Plaintiffs).
Nos. S-08-0078, S-08-0085.
Supreme Court of Wyoming.
March 4, 2009.
*1055 Representing Appellants, Philip White and Kathleen White: Philip White, Jr., Attorney at Law, Laramie, Wyoming.
Representing Appellant, John Adamson: John D. Adamson, pro se.
Representing Appellees: Frank J. Jones, Attorney at Law, Wheatland, Wyoming.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
BURKE, Justice.
[¶ 1] Willard and Cynthia Woods filed suit in district court seeking to quiet their title to several small pieces of property located in the interior of their ranch property. Among the defendants were John Adamson and Philip and Kathleen White. The district court entered summary judgment against Mr. Adamson and the Whites. Their separate appeals have been consolidated before this Court. We will reverse, having concluded that the Woods did not establish the facts needed to support their motions for summary judgment.

ISSUES
[¶ 2] We consider these three issues:
1. Do genuine issues of material fact exist that preclude summary judgment?
2. Did the Woods have standing to challenge the tax deeds?
3. Are the Woods' claims barred by the applicable statutes of limitation?

FACTS
[¶ 3] Ralph and Eva Kent owned a ranch in a remote and sparsely populated part of Albany County, Wyoming, encompassing nearly four thousand acres of deeded land and leased public land. On May 20, 1971, the Kents conveyed approximately 320 acres of their property to Glenco Development Company, Inc., a Missouri corporation. Less than a month later, Glenco filed and recorded with the Albany County Clerk the plat of a subdivision, called the Te-Ke-Ki Subdivision, covering 13.52 acres of the property they had acquired from the Kents.
[¶ 4] The Te-Ke-Ki Subdivision has a number of notable features. Because it is completely surrounded by the ranch property, there is no public access to the subdivision. There are eighty lots on 13.52 acres, making the average lot roughly 7,000 square feet in size. The lots are burdened by protective covenants that declare Glenco's intention "to maintain the said real property as a first class condominium complex development." Among many other restrictions, the covenants prohibit all construction until after Glenco establishes water and sewer systems for the subdivision. Glenco has not established these systems, so construction remains prohibited. Apparently, Glenco no longer exists, and the Woods hold title to almost all of the lots,[1] so the situation is unlikely to change.
*1056 [¶ 5] On July 21, 1971, approximately forty days after filing the subdivision plat, Glenco conveyed back to Mr. Kent all of the 320 acres Glenco had acquired from the Kents, including the 13.52 acres covered by the subdivision. That reconveyance was not filed with the Albany County Clerk until September 1, 1972. In the interim, and despite the reconveyance to Mr. Kent, Glenco sold several lots in the Te-Ke-Ki Subdivision to third parties. Among the transactions, on September 11, 1971, Glenco sold lot 80 to Jerry and Candace Maynard. On November 15, 1971, it sold lot 8 to Don and Margaret Holton. On February 15, 1972, it sold the west half of lot 66 to Delmar and Donna Miley. All of these deeds were filed and recorded on May 22, 1972, nearly three and a half months before Glenco's reconveyance to Mr. Kent was filed and recorded.
[¶ 6] The very next year, the Maynards, the Holtons, and the Mileys did not pay the property taxes due on their lots. On September 5, 1974, the properties were sold[2] by the Albany County Treasurer at a tax sale. Philip and Kathleen White, appellants in Case No. S-08-0078, purchased the west half of lot 66 with a bid of four dollars and forty-three cents. John Adamson, the appellant in Case No. S-08-0085, purchased Lots 8 and 80 for a total of ten dollars and twenty-five cents. Mr. Adamson and the Whites received certificates of purchase following the tax sale in 1974, and apparently continued to pay taxes on the lots in subsequent years. They applied for tax deeds to their respective lots in 1979, and received them from the County Treasurer on January 16, 1980.
[¶ 7] After the tax sale, but before Mr. Adamson and the Whites received their tax deeds, the Kents obtained judgment in a quiet title action involving these lots.[3] The Maynards, the Holtons, and the Mileys were among the seventy named defendants. Mr. Adamson and the Whites were not. On April 3, 1975, the district court entered its judgment, ruling for some defendants and against others. It ruled in favor of the Maynards and Holtons (predecessors to Mr. Adamson), and quieted their respective titles to Lots 8 and 80. It ruled against the Mileys (predecessors to the Whites), and quieted title to the west half of Lot 66 in the Kents. The judgment was filed and recorded with the Albany County Clerk.
[¶ 8] The Woods acquired the ranch in 1992. On June 17, 2005, they filed an action in district court seeking to quiet their title to twenty of the lots in the subdivision. Among the nearly fifty defendants named were Mr. Adamson and the Whites. More than half of the defendants failed to respond to the complaint, and the district court entered default judgments against them. The Woods then moved for summary judgment against the remaining defendants. The Woods' primary argument was that they had acquired title through adverse possession.[4] The district court granted the Woods' summary judgment motions against five defendants, including Mr. Adamson and the Whites, not based on the adverse possession claim, but on the basis that these defendants' tax deeds were undisputed title to seventy-six of the eighty lots in the subdivision. Albany County owns one and a half lots. The remaining two and a half lots are the subject of these appeals. *1057 invalid because of failure to comply with various statutory requirements. Mr. Adamson and the Whites are the only ones who appealed the district court's decisions.

STANDARD OF REVIEW
[¶ 9] As we have said many times: Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); Metz Beverage Co. v. Wyoming Beverages, Inc., 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." Id. Because summary judgment involves a purely legal determination, we undertake de novo review of a trial court's summary judgment decision. Glenn v. Union Pacific R.R. Co., 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).
Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC, 2008 WY 101, ¶ 8, 191 P.3d 125, 128-29 (Wyo.2008). We review a summary judgment decision using the same materials and following the same standards as the district court. Mathisen v. Thunder Basin Coal Co., LLC, 2007 WY 161, ¶ 9, 169 P.3d 61, 64 (Wyo.2007). We view the record from the vantage point most favorable to the party opposing summary judgment, and give that party the benefit of all favorable inferences that may fairly be drawn from the record. Id.

DISCUSSION

Background: Tax deeds in Wyoming
[¶ 10] To understand the appeals under consideration here, it is useful to place them in context. The Wyoming statutory provisions for obtaining, protecting, and defending tax deeds are now mostly codified in Wyo. Stat. Ann. § 39-13-108 (LexisNexis 2007). There are many specific and detailed requirements applicable to tax sales and tax deeds. Of particular relevance here are requirements that, upon applying for a tax deed, notice must be provided in a specified manner to the person in whose name the taxes were assessed, to the person in actual possession or occupancy of the property, to the record owner, and to mortgagees. Wyo. Stat. Ann. § 39-13-108(e)(v)(B). Further, after receiving a tax deed, the tax-sale purchaser must file the notices and proofs of service "to be recorded as other instruments affecting the conveyance of real property." Id. § 39-13-108(e)(v)(D).
[¶ 11] Over the years, Wyoming courts have required strict compliance with these statutory requirements, and have declared tax deeds invalid for relatively minor deviations from the requirements. Barrett v. Barrett, 46 Wyo. 84, 92-93, 23 P.2d 857, 860 (1933); Davis v. Minnesota Baptist Convention, 45 Wyo. 148, 156, 16 P.2d 48, 50 (1932). It has been observed that a "review of tax title litigation in Wyoming reveals a host of problems and uncertainties for those persons who have claimed land under tax deeds." Robert G. Berger, Comment, Marketable Title Legislation: Tax Deeds in Wyoming, XI Land & Water L.Rev. 2, 419 (1976). The problems facing tax deed purchasers are due, at least in part, to a strong policy of protecting the former owner's rights to redeem and recover his property. See, e.g., Barrett, 46 Wyo. at 97, 23 P.2d at 861 (Statutes "are to be regarded favorably and construed liberally in favor of the redemptioner."); Hackett v. Linch, 57 Wyo. 289, 297, 116 P.2d 868, 870 (1941).
[¶ 12] Tempering this policy of protecting former owners, the legislature enacted provisions in 1975 meant to promote more stability and better marketability for tax deeds. Codified as Wyo. Stat. Ann. §§ 34-2-131 through -134, this act expressly sets forth a policy of "confirming and clarifying [tax] titles of persons in possession," of providing "means of correcting procedural and jurisdictional defects," and of "rendering tax titles marketable and protecting purchasers thereof against remote claims." Wyo. Stat. Ann. § 34-2-134.
[¶ 13] These competing policies bear on the appeals before us now. Mr. Adamson and the Whites purchased their lots at a tax sale thirty-five years ago, and have, apparently, paid the property taxes on those lots *1058 every year since then. They obtained their tax deeds nearly thirty years ago. After this length of time, it may seem that their tax titles should be protected "against remote claims." On the other hand, as detailed below, Mr. Adamson and the Whites have never taken possession of their lots or put them to any practical use. Under the legislature's 1975 enactment, challenges to tax deeds can be cut off after only two years if the tax deed owner has been in possession for six months during that period. Wyo. Stat. Ann. § 34-2-132. (See infra ¶ 32.) Because Mr. Adamson and the Whites did not take possession of their lots, they cannot take advantage of the provisions by which the legislature offered protection to their tax deeds.
[¶ 14] In contrast, for the past seventeen years the Woods have used these lots as part of their ranch. Their principle claim in district court was that they had acquired title by adverse possession.[5] It is understandable that they want to avoid disruption and consolidate their property holdings by quieting their title to these lots. On the other hand, when the Woods acquired their ranch in 1992, these tax deeds were of record. The Woods had constructive notice, at the very least, that Mr. Adamson and the Whites claimed interests in the property. And because the Woods did not own the ranch when the lots were sold for taxes, it is not clear that they should benefit from the policy favoring former owners and their rights to redeem and recover property.

The Woods' claims against Mr. Adamson and the Whites
[¶ 15] On June 17, 2005, the Woods filed their complaint in this matter. It listed almost fifty defendants, but contained only three paragraphs of allegations: that this was an action to quiet title to real property located in Albany County, Wyoming; that the Woods were the owners in fee simple and in possession of the listed property; and that the defendants claimed an estate or interest adverse to the Woods. The complaint did not reveal the legal theories or facts underlying the Woods' claims. Answers from Mr. Adamson and the Whites generally denied the Woods' claim to title.
[¶ 16] On February 13, 2007, the Woods filed motions for summary judgment against several of the defendants, including Mr. Adamson and the Whites. Each motion was supported by an affidavit from Mr. Woods, and each affidavit contained essentially identical information. Mr. Woods stated that he and Mrs. Woods had acquired the property by deed on November 25, 1992. Attached were copies of deeds[6] by which Israel Roter, Charles C. Lukoff, and Rose Cartoon (as Trustee of the Leo Cartoon Decedent Trust) conveyed the property to the Woods. The affidavits further stated that the Woods took possession of the lots on the date of purchase, that the lots have never been fenced off from the rest of the ranch property, and that the Woods have harvested hay from the lots, grazed cattle on them, and "generally utilized [them] as a portion of our ranch." The Woods' summary judgment motions also incorporated copies of the depositions of all defendants who had been deposed.
[¶ 17] The Woods' summary judgment motion against the Whites also incorporated a set of documents, which were: (1) the subdivision plat; (2) the declaration of protective covenants; (3) a copy of the 1971 deed by which the Kents conveyed the property to Glenco; (4) a copy of the 1971 reconveyance from Glenco to the Kents; (5) a copy of the 1972 deed from Glenco to the Mileys for the west half of Lot 66; (6) a copy of the 1975 judgment in the Kents' quiet title action; (7) a copy of the Whites' 1974 Certificate of Purchase for the west half of Lot 66 from the tax sale; (8) a copy of the Whites' 1980 tax deed for the half lot; and (9) a copy *1059 of the recorded notice the Whites had published in 1979 before applying for their tax deed. The Woods' summary judgment motion against Mr. Adamson incorporated a similar set of materials, except that they related to Lots 8 and 80, and there was no copy of any recorded notice.
[¶ 18] When considering these materials, we keep in mind that the party moving for summary judgment bears "the initial burden of establishing a prima facie case with admissible evidence." Kruckenberg v. Ding Masters, Inc., 2008 WY 40, ¶ 20, 180 P.3d 895, 901 (Wyo.2008). To establish a prima facie case, the moving party must demonstrate "the absence of a genuine issue of material fact." Knapp v. Landex Corp., 2006 WY 36, ¶ 10, 130 P.3d 924, 927 (Wyo. 2006) (emphasis in original). The "evidence that is relied upon to sustain or defeat a motion for summary judgment must be such as would be admissible at trial" and "it should be as carefully tailored and professionally correct as any evidence which would be presented to the court at the time of trial." Equality Bank of Evansville v. Suomi, 836 P.2d 325, 330 (Wyo.1992). We must determine whether the Woods carried this burden of establishing the absence of genuine issues of material fact in their summary judgment motions against Mr. Adamson and the Whites.
[¶ 19] The question of whether summary judgment was precluded by the existence of genuine issues of material fact is intertwined with the issue of standing. The Woods challenge these tax deeds on the basis of noncompliance with the statutory requirements for providing notice to interested parties. It is undisputed that the Woods did not own or claim an interest in the property in 1974 when the lots were sold at the tax sale, or in 1979 when Mr. Adamson and the Whites applied for their tax deeds, but the Woods appear to claim that they are entitled to challenge the tax deeds as successors to the Kents. Mr. Adamson and the Whites contend that, on two bases, the Woods lack standing to maintain these claims. First, Mr. Adamson and the Whites contend that the Woods have not provided the facts needed to show that the Kents were entitled to notice of the pending tax deeds. Second, even if the Kents might have been entitled to notice, the Woods provided "no evidence in the record that the Woods are successors in interest to [the] Kents."
[¶ 20] Standing, in broad terms, refers to a "party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary 1442 (8th ed. 2004). As stated by the United States Supreme Court:
Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact.... Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal citations and punctuation omitted).
[¶ 21] We have established similar standing requirements for a party challenging the validity of a tax deed. With regard to injury in fact, "the burden is cast upon the party seeking to invalidate the tax deed to show that he was prejudiced or injured by non-compliance with statutes before the tax deed will be declared void." Barlow v. Lonabaugh, 61 Wyo. 118, 132, 156 P.2d 289, 294 (1945), citing Andrews v. North Side Canal Co., 52 Idaho 117, 126, 12 P.2d 263, 267 (1932). With regard to whether the injury will be redressed, we have said that "[t]he validity of a tax title or of a tax sale can be assailed only by one who can show that he or those under whom he claims had some title to or interest in the property at the time of the sale." Hudson v. Erickson, 67 Wyo. 167, 185-86, 216 P.2d 379, 385 (1950), quoting 51 Am.Jur. 979.
[¶ 22] Where a tax deed is challenged by a former owner, it seems apparent that improper notice caused prejudice or injury by denying or interfering with the former owner's opportunity to redeem the property. See, e.g., State ex rel. Bishop v. Bramblette, *1060 43 Wyo. 470, 478, 5 P.2d 279, 282 (1931) ("The purpose of notice in either event is to bring to the person entitled to redeem knowledge that the land has been sold for taxes and within what time the same may be redeemed from such sale," quoting Burns v. State, 25 Wyo. 491, 501, 173 P. 55, 57 (1918).). Where the claim is more remotethat is, where a tax deed is challenged by someone other than the former ownerthen prejudice and injury are less apparent, and it is less likely that a favorable decision could provide redress. The Woods were not the owners at the time of the tax sale or tax deed, so we must review the record to determine whether, in support of their summary judgment motions, they submitted facts adequate to show that they were prejudiced or injured, and that a favorable court decision would provide them redress.
[¶ 23] The Whites claim title to the west half of Lot 66. In 1971, the Kents conveyed this property to Glenco. Glenco conveyed the same property twice, first to Mr. Kent in 1971, then to the Mileys in 1972. Because the Mileys' conveyance was the "first duly recorded," Mr. Kent's later-filed conveyance is "void, as against" the Mileys. Wyo. Stat. Ann. § 34-1-120. When the Mileys did not pay their taxes, the Whites purchased the property at the tax sale in 1974. In 1975, the Kents obtained a quiet title judgment against the Mileys, and filed and recorded that judgment. This judgment, in effect, conveyed all of the Mileys' interest in the property to the Kents. The judgment did not affect the Whites' interest, however, because the Whites were not defendants in the suit. In 1979, the Whites applied for a tax deed to the property. The record indicates that the Whites provided notice to the Mileys. It does not indicate that notice was provided to the Kents. The Whites received their tax deed in 1980.
[¶ 24] The Woods assert that the Kents were the record owners in 1979, and were therefore entitled to notice under Wyo. Stat. Ann. § 39-13-108(e)(v)(B)(III). On the basis of this defect, the Woods contend that the Whites' tax deed is invalid. However, the facts in this record fail to establish that the Kents were the record owners in 1979. They actually suggest the contrary. The property was conveyed to Roter, Lukoff, and Cartoon in 1973. They conveyed it to the Woods in 1992. If Roter, Lukoff, and Cartoon owned the property continuously from 1973 to 1992, then they were the record owners in 1979 when the Whites applied for their tax deed.[7] If there are other conveyances indicating that the Kents were the record owners in 1979, they are absent from this record. The question of who was the record owner in 1979 remains a genuine issue of material fact, and the Woods' summary judgment motion against the Whites should not have been granted.
[¶ 25] Next, the Woods apparently claim to be the Kents' successors, and on that basis contend that they are entitled to challenge the Whites' tax deed. The record is, however, devoid of any facts establishing that the Woods are the successors in interest to the Kents.[8] The record contains 1992 deeds by which the Woods obtained the property from Roter, Lukoff, and Cartoon. It contains a 1973 deed by which Roter, Lukoff, and Cartoon obtained the property from the Medicine Bow Land and Cattle Company, The chain stops there. There is no deed or other evidence indicating how, when, or from whom Medicine Bow obtained its interest in the property. No connection is established between Medicine Bow and the Kents, and so no connection is established between the Woods and the Kents. Even in his affidavit, Mr. Woods does not state that the Woods derived their title from the Kents. There remains a genuine issue of material fact as to whether the Woods are successors in interest to the Kents, and summary judgment was granted in error.
*1061 [¶ 26] Mr. Adamson claims title to Lots 8 and 80. In 1971, the Kents conveyed the property to Glenco. Glenco conveyed the property back to Mr. Kent in 1971. Glenco also conveyed Lot 8 to the Holtons, and Lot 80 to the Maynards. The Holtons and the Maynards filed and recorded their conveyances before Mr. Kent filed and recorded his, so Mr. Kent's later-filed conveyance is "void, as against" the Holtons and the Maynards. Wyo. Stat. Ann. § 34-1-120. When the Holtons and the Maynards did not pay their taxes, Mr. Adamson purchased the lots at the tax sale in 1974. He applied for the tax deeds in 1979, and obtained them in 1980.
[¶ 27] Again, the Woods appear to contend that the Kents were the record owners of Lots 8 and 80 when Mr. Adamson applied for his tax deed in 1979. The Woods further contend, and Mr. Adamson concedes, that he did not file his notice as required by Wyo. Stat. Ann. § 39-13-108(e)(v)(D). On the basis of this defect, the Woods contend that Mr. Adamson's tax deed is invalid. However, as in the Whites' case, the Woods have not provided the facts needed to show they are the successors to the Kents. This genuine issue of material fact should have precluded summary judgment against Mr. Adamson.
[¶ 28] In Mr. Adamson's case, however, the analysis must be taken a step further. In the Whites' case, the Woods failed to provide facts establishing that the Kents were the record owners of the west half of Lot 66 in 1979. In Mr. Adamson's case, in contrast, the Woods provided facts establishing that the Kents were not the record owners of Lots 8 and 80 in 1979. The Kents were unsuccessful in their 1975 quiet title action against the Holtons and the Maynards. The quiet title judgment, in effect, confirmed the Holtons' and the Maynards' interests in the property. These facts establish that the Kents were not the record owners in 1979, because the Holtons and the Maynards were. On the record before us, there is no genuine issue of material fact on this issue, but as explained next, it was Mr. Adamson who was entitled to judgment as a matter of law on this claim.
[¶ 29] In the Idaho case of Harris v. Rasmussen, 106 Idaho 322, 678 P.2d 114 (1984), the Clarks had conveyed a one-acre parcel of land to Ms. Cazier in 1974. Ms. Cazier did not pay the property taxes, and the property was sold at a tax sale to the Harrises, who recorded their deed in 1980. Later that same year, the Clarks conveyed a larger parcel of property, including the one-acre parcel at issue, to the Rasmussens. The Rasmussens sought to quiet title against the Harrises. The Idaho court determined that the Rasmussens could not challenge the validity of the Harrises' tax deed, with this explanation:
As noted above, the facts demonstrate that Marie Cazier was the record owner of the parcel, that the county took a tax deed because of her failure to pay the property taxes due, and that the Harrises purchased the parcel from the county. The Rasmussens, on the other hand, trace their title to Marie Cazier's predecessor in interest, the Clarks.... The record, however, does not show that the Clarks owned any interest in the one-acre parcel when they purported to convey it as a part of the larger tract sold to the Rasmussens....
Here, the Rasmussens have no valid claim to the property. Even if the tax deed were to be declared void, there is nothing in the record to indicate they would benefit. All of the benefit would inure to Marie Cazier or her successors in interest. Nor is there any indication that the Rasmussens have been injured in any way by the ruling upholding the county's procedure in taking the tax deed.
Id. at 323-24, 678 P.2d at 115-116.
*1062 
[¶ 30] As illustrated above, Mr. Adamson's case is strikingly similar. Glenco conveyed the disputed lots to the Holtons and the Maynards. It also conveyed the lots, as part of a larger parcel, to the Kents. The Holtons and the Maynards recorded their conveyances first, so the Kents' conveyance is void as to them. When the Holtons and the Maynards did not pay the property taxes, their lots were sold at a tax sale to Mr. Adamson. The Woods contend that Mr. Adamson's tax deed is invalid. But even if Mr. Adamson's tax deed is invalid, the Woods still have no valid claim to the property. The benefits would inure to the Maynards and the Holtons, or to their successors. The benefits would not inure to Glenco, the Kents, or the Woods.[9] Even a court decision in their favor could not vest title in the Woods or otherwise redress their alleged injury.
[¶ 31] Nor is there any indication that Glenco, the Kents, or the Woods suffered any prejudice or injury due to any defect in Mr. Adamson's notice. Notice was required to be given to the record owners, who were the Holtons and the Maynards. If the Kents were not entitled to notice, then they suffered no prejudice, and suffered no injury. Because the Kents could not challenge these tax deeds, neither can their alleged successors, the Woods. Based on the record before us, it was error to grant summary judgment against Mr. Adamson, and taking it a step further, Mr. Adamson would be entitled to judgment in his favor on this claim.

Remaining issues

Statutes of limitation
[¶ 32] Though we have already determined that the district court's summary judgment decisions must be reversed, we will address these additional issues that seem likely to arise again on remand. The parties have disputed whether two different statutes of limitation bar the Woods' challenge to the tax deeds. The first is Wyo. Stat. Ann. § 34-2-132(a), which provides that:
No action, suit or other proceeding shall be commenced by the former owner to set aside, declare invalid or redeem from a tax deed or the sale, forfeiture, foreclosure or other proceeding upon which it is based or to recover possession, quiet title or otherwise litigate or contest the title of the grantee, if:
(i) Two (2) years or more have elapsed after the date of recording the deed in the office of the county clerk and ex officio register of deeds for the county in which the real estate described in the deed is situated; and
(ii) The grantee has been in possession of the real estate continuously for a period of at least six (6) months, at any time after one (1) year and six (6) months have elapsed since the date of recording of the tax deed.
By its plain language, this statute applies only if the grantee has been in possession of *1063 the property for at least six months. The record demonstrates that the Whites have never been in possession of the west half of Lot 66. In his deposition, Mr. White stated as follows:
Q. After you purchased this property in 1980, Mr. White, have you ever visited the site of the Te-ke-ki Subdivision?
A. [by Mr. White] Yes, I did.
Q. And when did you first go to the area?
A. Well, best I can recall, it was like in the mid '80s.
Q. Would you tell us the circumstances and the reason that you were making the visit?
A. Just to see where it was located.... I, of course, couldn't tell exactly where my lot was. But I drove out there. I went to the farm house there, the ranch house. Nobody was home. I looked around the house, trying to see if anybody was around. I didn't see anybody. And I think II don't know whether I drove or walked kind of up to thea little road that went up to the north of the ranch house, over toward where I thought the property was. I did have a topo map that I'd sort of marked out where it was. And Iseems to me there was a gate there. And I didn't actually go through the gate. I just looked at it from the fence....
Q. And were you there more than one time?
A. No. That was it....
Q. Since that time, have you, or anyone on your behalf, made any use of the west half
A. No.
Q.of Lot 66?
A. No.
Q. Do you know if anyone has been on thephysically on the property, on your behalf, since the mid '80s?
A. No.[10]
[¶ 33] Since purchasing the lot at the 1974 tax sale, Mr. White visited the approximate location of the subdivision only once.[11] He cannot say that he ever set foot on the half-lot he claims. The Whites have never taken possession of the lot, and because they have not been in possession for any period of at least six months, the statute of limitation quoted above does not apply.
[¶ 34] The Whites claim constructive possession, citing Ohio Oil Co. v. Wyoming Agency, 63 Wyo. 187, 208, 179 P.2d 773, 779 (1947) for the proposition that "[i]f the land is not occupied by any one, the plaintiff having title may sue to have his title quieted, either because the remedy exists independent of the statute, or because his title gives him constructive possession." (Citations omitted.) Ohio Oil involved a dispute over an undeveloped mineral estate, where neither party owned the surface estate. The concept of constructive possession has been applied to surface interests as well. See Goodrich v. Stobbe, 908 P.2d 416, 419-20 (Wyo.1995) ("We agree with the principle of law that, when the lands are not occupied after tax sales, the holders of the tax deeds have constructive possession of the properties and the statute of limitations commences to run.").
[¶ 35] These cases do not apply here, because the west half of Lot 66 was not unoccupied. In his affidavit, Mr. Woods stated that they took possession of the lands on the date of purchase, and had been in possession continuously since then. Mr. Woods further detailed that they had "harvested hay from the property," "grazed cattle on the property," and "generally utilized it as a portion of our ranch." These assertions were not disputed, *1064 and Mr. Adamson tended to confirm them in his deposition, testifying that "It appeared maybe that grass was cut out there. It wasn't just growing wild." Given the character and location of this property, the Woods' use of it for grazing and haying constitutes occupation and possession. See Davis v. Chadwick, 2002 WY 157, ¶ 13, 55 P.3d 1267, 1272 (Wyo.2002) (Because "the land was suitable for grazing, we can only conclude that grazing activities on the disputed parcel were an appropriate use sufficient to assert dominion over the land."). The Woods' actual possession precludes the Whites' claim to constructive possession.
[¶ 36] The second statute of limitation cited is Wyo. Stat. Ann. § 39-13-108(e)(vii)(D):
No action for the recovery of real property sold for the nonpayment of taxes shall be maintained unless commenced within six (6) years after the date of sale for taxes.
The key to this statute is that it is a limitation on actions for the recovery of real property. Many years ago, we observed that:
One in actual possession of property has no reason for trying to recover it. He cannot maintain an action for that purpose, and a law requiring him to institute one would be absurd. The duty to bring an action to recover the property is on the person who is not in possession.... [Therefore,] the statute does not start to run in favor of the tax-purchaser until he takes possession.

Electrolytic Copper Co. v. Rambler Consol. Mines Corp., 34 Wyo. 304, 314, 243 P. 126, 129 (1926) (emphasis added), overruled on other grounds by Goodrich v. Stobbe, 908 P.2d 416 (Wyo.1995). Later, in Denny v. Stevens, 52 Wyo. 253, 260, 73 P.2d 308, 310 (1937), we reconfirmed that "this statute would not commence to run in favor of the purchaser of a tax title until he takes possession." The Woods' action in this case is not one to recover the property. The Woods are in possession, and have no need to recover it. The Whites have never been in possession, and this statute of limitation never commenced to run in favor of the Whites. It does not bar the Woods' quiet title action.

Payment of property taxes
[¶ 37] Although not stated as a separate issue, the Whites assert that they have paid the property taxes on this lot ever since the tax sale, and insist that the payment of taxes must "mean something to the law." The legislature has provided remedies for tax purchasers whose tax deeds are discovered or adjudged to be invalid. See Wyo. Stat. Ann. § 39-13-108(e)(viii); Thompson-Green v. Estate of Drobish, 2006 WY 126, ¶ 20, 143 P.3d 897, 904 (Wyo.2006).

CONCLUSION
[¶ 38] We have determined that the district court improperly granted summary judgment in favor of the Woods in their challenges to the tax deeds of Mr. Adamson and the Whites. We therefore remand to the district court for further proceedings consistent with this opinion.
NOTES
[1] The Woods inform us that, as a result of this litigation and other efforts, they have acquired
[2] It may be that the county does not sell "the properties" at a tax sale, but only a defeasible right to the property that may be extinguished if the former owner redeems. However, applicable statutory provisions, including Wyo. Stat. Ann. § 39-13-108(e)(ii), contain phrases like the "sale of real property" and "the real property to be sold." The tax sale purchasers in this case received "Certificate[s] of Purchase of Real Estate for Taxes," declaring them "purchaser of the above described lands." We adopt the terminology in this opinion without comment on its legal significance.
[3] The record does not show when this quiet title action commenced, only when judgment was entered. Also, the listed plaintiffs in this quiet title action were the Kents and Mr. Bowen. The record does not disclose how Mr. Bowen obtained his interest in the property. For brevity, this opinion will use "the Kents" to refer to all three collectively.
[4] The district court denied the Woods' motion for summary judgment against five of the defendants, not including Mr. Adamson or the Whites, ruling that there were genuine issues of material fact relating to the Woods' claim of adverse possession. Prior to trial, the Woods reached settlements with these defendants, and the district court entered judgment quieting the Woods' title to these defendants' lots.
[5] As discussed below, the district court granted summary judgment against Mr. Adamson and the Whites on the basis of invalid tax deeds. It did not reach a decision on the adverse possession claims against Mr. Adamson and the Whites, and it appears that the Woods' summary judgment motion on the adverse possession claim will remain before the district court on remand.
[6] There are two such deeds, one a quit claim deed conveying the lots subject to the subdivision plat, and the other a warranty deed conveying, as far as we can tell, the rest of the ranch property. The parties do not suggest that the different deed types have any significance in these appeals, so we will generally overlook the distinction in this opinion.
[7] In addition, if Roter, Lukoff, and Cartoon were the record owners from 1973 to 1992, it seems curious that the Kents were plaintiffs in the 1975 quiet title action.
[8] For that reason, it is premature for us to consider the Woods' legal argument that, as successors to the Kents, they may exert the Kents' right to challenge the Whites' tax deed. In addition, the parties have not addressed or briefed this question.
[9] For purposes of this paragraph and the next, it makes no difference whether the Woods are in fact the successors to the Kents.
[10] Mr. Adamson provided very similar deposition testimony, stating that he went to the approximate location of the subdivision in the early 1980's, and walked through the area where he "thought approximately the lots are located."
[11] The circumstances here are even more extreme than those we faced in Trefren v. Lewis, 852 P.2d 323, 328 (Wyo.1993), where we remarked that, Considering that the tax deed grantees paid the delinquent taxes and obtained a certificate of sale in 1984, they demonstrated a remarkable lack of curiosity about the lots for the next six years. By their own testimony, they did not locate and view the property until about a week before they made application for the tax deed.